UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GRACE O.,[1] | ) |
| | ) No. 22 CV 6168 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Magistrate Judge Young B. Kim |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) May 6, 2025 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Grace O. seeks disability insurance benefits ("DIB") asserting she is disabled by carpal tunnel syndrome, median neuropathy, degenerative disc disease, radiculopathy, degenerative joint changes and arthritis, allergies and rhinitis, asthma, and eczema. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for benefits. For the following reasons, Grace's remand request is granted:

**Procedural History**

Grace filed an application for DIB in July 2020 alleging a disability onset date of March 16, 2020. (Administrative Record ("A.R.") 15.) Her application was denied initially and upon reconsideration at the administrative level. (Id. at 67-76, 78-89.) Grace then sought and was granted a hearing before an Administrative Law Judge

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Grace's first name and last initial in this opinion to protect her privacy to the extent possible.

1

("ALJ"). (Id. at 131-45, 150-74.) Grace appeared with her attorney at a November 2021 hearing, during which Grace and a vocational expert ("VE") testified. (Id. at 36-66.) The ALJ issued his decision the following month, ruling that Grace is not disabled, (id. at 12-30), and the Appeals Council denied Grace's request for review, (id. at 1-3), making the ALJ's decision the final decision of the Commissioner, *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Grace then filed this action seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 7).

## Analysis

Grace argues that the matter must be remanded for further proceedings because the ALJ did not support his residual functional capacity ("RFC") determination with substantial evidence and violated Social Security Regulation ("SSR") 16-3p when assessing her subjective symptoms. (R. 15, Pl.'s Mem. at 5-15.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide a logical bridge between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)

2

(internal quotation and citation omitted). Put another way, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Having considered the record under this standard, the court finds that remand is warranted here.

**A.     RFC**

Grace complains that the ALJ's RFC finding lacks evidentiary support because he rejected every medical opinion but offered no evidence to support the RFC determination. (R. 15, Pl.'s Mem. at 5-11.) The government responds that the ALJ "extensively considered the medical evidence, prior administrative medical findings, and medical opinions in the record and found that [Grace] could perform light work with numerous additional limitations." (R. 19, Govt.'s Mem. at 2-8.)

An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The ALJ "must incorporate a claimant's limitations," including those that are not severe, in developing the RFC. *See Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020); *see also Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (finding that when assessing RFC, ALJs must "evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling"). Where the ALJ does not rely upon medical opinions, he must "thoroughly discuss[] the medical and other evidence," considering

3

each of the claimant's "impairments and related function deficits," *Nina Joyce H. v. Saul*, No. 18 CV 4913, 2020 WL 212771, at *7 (N.D. Ill. Jan. 14, 2020), and "describ[e] how the evidence supports each [RFC] conclusion," *Norris v. Astrue*, 776 F. Supp. 2d 616, 637 (N.D. Ill. 2011). An ALJ's RFC analysis must "say enough to enable review of whether the ALJ considered the totality of a claimant's limitations," *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), and must provide a "logical bridge" between the evidence and the conclusions, *Butler*, 4 F.4th at 501.

The ALJ determined that Grace can perform light work as defined by 20 C.F.R. § 404.1567(b) and can "occasionally" lift/carry up to 20 pounds, "frequently" lift/carry up to 10 pounds, "push and/or pull to include operation of hand/or foot controls with the bilateral upper and lower extremities," frequently reach, handle, and finger with the bilateral upper extremities, and walk, stand, or sit for about 6 hours total per workday. But the ALJ concluded that Grace cannot climb ladders, ropes, or scaffolds and must avoid "all exposure to unprotected heights," "concentrated exposure to vibrations," and "concentrated exposure to respiratory irritants such as fumes, odors, dusts, and gases." (A.R. 24-25.)

When crafting this RFC, the ALJ discussed but rejected every medical opinion of record. (See R. 15, Pl.'s Mem. at 5-11.) The state agency medical consultants, Dr. Richard Bilinsky and Dr. Calixto Aquino, opined that Grace did not suffer from a severe medically determinable impairment. (A.R. 71-72 (October 2020 medical consultation), 85 (May 2021 medical consultation).) The ALJ deemed these opinions "not persuasive, as neither medical consultant had an opportunity to review the

4

complete record nor to hear [Grace's] testimony, which suggested her ability to work was affected by her cervical spine and carpal tunnel problems." (Id. at 28 (citing id. at 71-72, 85).) The ALJ also found Grace's primary care physician, Dr. Sinisa Boskovic's opinion that Grace is unable to perform sedentary work "not persuasive" because it was "not supported by the physician's treatment notes nor the complete medical record." (Id. (citing id. at 321-24 (Dr. Boskovic's October 2020 physical RFC questionnaire).) The ALJ further reasoned that Dr. Boskovic did not support his opinion with a "function-by-function analysis of how the symptoms . . . interfered with [Grace's] ability to perform work" and "citations to his treatments in support of his opinion as required by Social Security." (Id.) According to the ALJ, "[s]uch analysis would have been particularly useful to understand how carpal tunnel syndrome could interfere with [Grace's] ability to walk/stand or to sit for even two hours, as Dr. Boskovic had opined." (Id.) Finally, the ALJ rejected the consultative examiner's ("CE") opinions, because the CE failed to "include a medical source statement in which the physician opined, through a function-by-function analysis, to the limitations imposed on the claimant based on the documented findings." (Id. (citing id. at 374-78 (January 2021 internal medicine consultative exam).) Having rejected all medical opinions, the ALJ reported that the RFC was "made after examination of the claimant's medical record as a whole, consideration of the claimant's testimony, and consideration of the factors presented at 20 [C.F.R.] 404.1529 and [SSR] 16-03p." (Id. at 29.)

5

Grace argues that the ALJ erred by rejecting all medical opinions, without supporting his analysis with citations to record evidence. (R. 15, Pl.'s Mem. at 5-11.) The government concedes that the ALJ found all medical opinions "non persuasive" but asserts that the ALJ supported his rejection of each opinion with substantial evidence. (R. 19, Govt.'s Mem. at 2-8.) This is true, but the government sidesteps Grace's argument that the ALJ failed to explain and support his analysis with other specific evidence, which was necessary because he rejected all opinion evidence. (See R. 20, Pl.'s Reply at 1 ("The issue is that the ALJ found *no* opinions persuasive." (emphasis in original).) The court agrees with Grace because it simply cannot discern from the ALJ's decision the basis, or bases, upon which the ALJ relied when crafting Grace's RFC.

In developing Grace's RFC, the ALJ made clear that he did not rely on any medical opinions, (A.R. 27-28), or Grace's subjective symptoms, (id. at 25 (ALJ finding Grace's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [] not entirely consistent" with the record evidence)). The ALJ therefore had only objective medical evidence to rely upon. In fact, the ALJ says in the decision that he "consider[ed] the documented findings when determining the [RFC]." (Id. at 29.) But the ALJ has no medical training or expert experience and is ill-equipped to interpret objective medical evidence. *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves."). To be sure, an ALJ may not "play doctor" by using his own "lay opinions to fill evidentiary gaps in the record," *Chase v. Astrue*,

6

458 Fed. Appx. 553, 556-57 (7th Cir. 2012), or substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record," *Clifford v. Apfel*, 227 F.3d 863, 870-72 (7th Cir. 2000). And while the ALJ noted that he "consider[ed] the documented findings" of the CE when determining Grace's RFC, (A.R. 28 (citing id. at 375-78)), the decision does not explain how, if at all, the ALJ used these findings, and ultimately the ALJ said he rejected the CE's opinions. The CE's documented findings include Grace having: "restricted range of motion of the cervical spine"; "restricted range of motion in the right wrist with normal flexion and extension"; "mild difficulty with picking up a pen, buttoning and unbuttoning in the right hand"; and "[n]o difficulty with the left hand." (Id. at 376-77.) The CE further noted Grace's report that her pain was "10/10" and she had weakness in her right thumb. (Id. at 376.) As such, without tracing a path of reasoning as to how he developed Grace's RFC, the ALJ created an "evidentiary gap" that he could not fill with his own interpretation of objective medical evidence. *Suide v. Astrue*, 371 Fed. Appx. 648, 690 (7th Cir. 2010); *Lambert*, 896 F.3d at 774.

To be sure, the ALJ included a manipulative restriction in Grace's RFC that permitted work requiring "no more than frequent use of the upper extremities to perform gross or fine manipulations" and explained the restriction was based on an "assum[ption] that pain and/or numbness in her hands and fingers interfere with constant use of her hands." (A.R. 27-28.) But the ALJ did not provide the basis for his "assumption." (Id.; see also id. at 23 (citing id. at 555 (ALJ noting he "assumed the radiologist had seen mild osteoarthritis in [Grace's] right shoulder")).) And as

7

Grace points out, the ALJ left out a vital word when explaining his reasoning for imposing manipulative limitations. (R. 15, Pl.'s Mem. at 9 (citing A.R. 27).) That is, the ALJ writes, "To accommodate for stress on the claimant's generally [sic], she was provided a manipulative limitation that she no more than frequently reaches in all directions with her upper extremities." (A.R. 27.) The ALJ appears to have omitted a word or words in between "claimant's" and "generally," further precluding the court from understanding the reasoning behind the ALJ's RFC analysis. *See Jarnutowski*, 48 F.4th at 774 (noting that court must be able to review whether ALJ considered the "totality of a claimant's limitations"). And even though Grace testified that she had difficulty using her right hand and multiple medical sources discussed the same, the ALJ noted that "[r]adiographs of [Grace's] right hand did not appear to have been ordered or if they were, the images did not appear to have been submitted to the record." (Id. at 22.) But it is the "ALJ's responsibility to recognize the need for further medical evaluations of a claimant's conditions before making RFC and disability determinations." *Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (remanding after ALJ rejected severity of claimant's arthritis symptoms without ordering new x-rays).

The ALJ also included a weight restriction that permitted Grace to occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds but provided no support for either weight limitation. (See A.R. 24.) The only objective medical evidence supporting a weight limitation was from Grace's primary care physician who opined

8

that Grace could not lift 10 pounds, and the ALJ rejected this opinion. (See id. at 28 (citing id. at 322 (Dr. Boskovic's October 2020 physical RFC questionnaire)).)

Simply put, the court does not have enough information upon which to base its review. The ALJ appears to have crafted his own RFC assessment by rejecting medical opinions and instead relying on his own interpretation of the medical evidence. *Bailey v. Barnhart*, 473 F. Supp. 2d 842, 848 (N.D. Ill. 2006) (ALJ may not "substitute opinion for a physician"). ALJs "are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). Remand is thus warranted.

## B. Symptom Assessment

Grace asserts that the ALJ violated SSR 16-3p when finding that her symptoms were not as severe as alleged. (R. 15, Pl.'s Mem. at 11-15.) She argues that the ALJ's analysis suffers from a fatal inconsistency insofar as he concluded that she could perform her past work as a dental hygienist. (Id. at 11.) An ALJ's symptom evaluation is entitled to great deference and may only be reversed where "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). But the ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence," *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), and must consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors in assessing the severity of the claimant's symptoms, SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). Further, "an administrative agency's decision cannot be upheld when the reasoning process

9

employed by the decision maker exhibits deep logical flaws." *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004).

Grace's subjective symptoms include the worsening of her carpal tunnel syndrome, as evidenced by her difficulty using her hands to perform fine finger manipulations such as opening a jar and buttoning buttons. (A.R. 26.) She testified that she wears braces on both wrists nightly and dropped dental instruments at her past job as a dental hygienist, making her fearful of "hurting a patient should an instrument slip." (Id.) Grace reported difficulty preparing food because of pain, numbness, and tingling in her hands and wrists. (Id. at 27 (citing id. at 224 (Grace's September 2020 function report); see also id. (reporting difficulty opening pill bottles), 226 (reporting inability to hold knitting needles), 227 (reporting pain when holding "small parts" or using hands to open jars or lids)).) Grace reported that although her provider recommended that she undergo surgery to open the right carpel tunnel, she decided to wait. (Id. at 21; see also id. at 23 (citing id. at 48 (Grace testifying that she decided against surgery because she had "several friends who had undergone the procedure but had no symptom relief")).) Grace also received a steroid injection in her cervical spine but reported that it did not reduce her pain. (Id. at 27.)

The ALJ's analysis of Grace's subjective symptoms demonstrates a "deep logical flaw," *Carradine*, 360 F.3d at 756, because the ALJ states both that Grace's symptoms may preclude her from performing her past relevant work as a dental hygienist, and that she could in fact perform such past work, (A.R. 25, 29). After deciding that Grace's statements about the intensity, persistence and limiting effects

10

of her symptoms were not entirely consistent with the record evidence, the ALJ ruled that "[t]here was nothing that suggested [Grace] exaggerated the severity of her symptoms." (A.R. 25.) The ALJ continued that "while [Grace's] medical problems might preclude her from work as a dental hygienist, neither her testimony nor the evidence suggest she is unable to perform any work-related activity." (Id. at 25-26.) The ALJ then ruled, however, that Grace was in fact "capable of performing past relevant work as a dental hygienist." (Id. at 29.) The ALJ's statements—that Grace's medical problems might preclude her from work as a dental hygienist and that she can work as a dental hygienist—conflict with one another. (See id. at 25-26, 29.) If Grace's medical problems could preclude her from working as a dental hygienist, then the ALJ should not have found her capable of working as one. The government does little to defend this point, and in fact acknowledges the internal conflict before nonetheless arguing that Grace left her past job because of the global pandemic and not because of any issues with her hands. (R. 19, Govt.'s Mem. at 9-10.) But this argument does not reconcile the flaw identified.

Remand is therefore also warranted on this ground. *Allord v. Barnhart*, 455 F.3d 818, 822 (7th Cir. 2006) ("[T]he flaws in the [ALJ's] reasoning are too serious to allow us to uphold the Social Security Administration's decision."); *see also Willie B. v. Kijakazi*, No. 20 CV 7440, 2022 WL 1773737, at *4 (N.D. Ill. June 1, 2022) (remanding where ALJ committed logical error); *Prate v. Colvin*, 69 F. Supp. 3d 868, 879 (N.D. Ill. 2014) (ALJ's opinion "repeatedly misstates the contents of the record and, on the whole, betrays no awareness of the extensive record evidence supporting

11

[the claimant's] claims"). Given the errors identified in the ALJ's RFC and symptom analysis, a new RFC may be warranted on remand.

## Conclusion

For the foregoing reasons, Grace's remand request is granted, and the matter is remanded for further proceedings consistent with this opinion.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate**